### Ex Parte M. L. Looper.

No. 840.   Decided December 7, 1910.

Rehearing Denied February 8, 1911.

**1.—Habeas Corpus—Contempt—Injunction—Intoxicating Liquors—Local Option —Constitutional Law.**

The District Court is authorized to issue writs of injunction restraining the unlawful sale of intoxicating liquors in local option territory, and to punish any one for a violation of said writ as in contempt of court. Following Ex Parte Roper, 61 Texas Crim. Rep., 68.

**2.—Same—Former Jeopardy.**

Where relator was arraigned for contempt of court for violating the writ of injunction restraining him from the unlawful sale of intoxicating liquors in local option territory, he could not claim former jeopardy and plead in bar a judgment of conviction in the County Court for selling whisky in violation of the local option law.

**3.—Same—Writ of Injunction—Contempt—Vacation.**

Under the Revised Statutes, Article 3011, and under general precedent, a person may be fined for contempt in vacation for a violation of an injunction restraining him from unlawfully selling intoxicating liquors in local option territory. Overruling Ex Parte Ellis, 37 Texas Crim. Rep., 539.

From Johnson County.

Original habeas corpus proceeding asking for a release from commitment of contempt for a violation of the writ of injunction restraining relator from the unlawful sale of intoxicating liquors in local option territory.

The opinion states the case.

*Odell & Johnson,* for relator.—Judgments of contempt can not be entered in the District Court in vacation: Ex parte Ellis, 37 Texas Crim. Rep., 539.

*C. E. Lane,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—On September 19, 1910, one of the Judges of this court granted a writ of habeas corpus to the relator, M. L. Looper, commanding the sheriff having him in custody to appear before this court on the first Monday in October, and show cause why he detained the said M. L. Looper. The showing on the return is that he holds him by virtue of an order issued by the District Judge of Johnson County for contempt for violating an injunction that theretofore issued restraining and enjoining the relator from selling intoxicating liquors in any place in Johnson County, Texas, and from the establishing, maintaining or conducting any place in said county wherein intoxicating liquors are kept and sold in violation of law. All the questions raised in this case have been decided by this court adversely to relator's contention in the case of Ex parte Roper, 61 Texas Crim. Rep., 68, this day decided, and therefore it will be unnecessary to say anything further on the different questions raised.

However, there is one question in this case that is not in the Roper case that is, perhaps, necessary to pass upon. It is contended, and the proof shows, that the relator had been tried and convicted in the County Court of Johnson County for unlawfully selling whisky in violation of the local option law, and the contention is made here that by reason of his conviction in the criminal case he should be discharged, and he pleads that judgment of conviction in bar of the punishment awarded by the court for contempt, and says that he should be released by reason thereof, because he can not be put in jeopardy twice for the same offense. This contention is not correct, and is not now an open question in this State. Practically the identical point raised here was decided adversely to relator's contention in the case of Ex parte Allison, 99 Texas, 455. The opinion in that case was rendered by

Chief. Justice Gaines, and discussing the proposition that the Legislature has no power to confer upon the courts the authority to enjoin the commission of crime or the establishment or continuance of a public nuisance, Judge Gaines says:

"Nor do we think that the Act in question infringes that provision of the Bill of Rights which declares that 'no person, for the same offense, shall be twice put in jeopardy of life or liberty.' It is true that if he commits the act which he is enjoined from committing, and such act be a violation of the penal laws of the State, he may under this statute be punished for the contempt, and also for the violation of the criminal law. But these are not 'the same offense.' In the former case he is punished for a violation of the orders of the court, and in the latter for an offense 'against the peace and dignity of the State.' One who makes an assault in the presence of the court, in such a manner as to constitute a contempt of court, is punishable, not only for the contempt, but also for the assault. . . .

"It is also urged in argument, in a somewhat indefinite way, that the enjoining of crimes or public nuisances was unknown to the common law, and that therefore the Legislature was without power to provide for such injunction. This involves the question whether the procedure provided for in the act is 'due course of the law of the land.' This question has been answered by the Supreme Court of the United States in the case of Mugler v. Kansas, 123 U. S., 623. There the court say: 'Equally untenable is the proposition that proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law.' . . .

"The whole of title 3 of our Code of Criminal Procedure is devoted to the means for the prevention of crime, and provides very much of the same remedies as were allowed at common law. Such being the facts, we fail to see that there is any peculiarity about the writ of injunction, or any peculiar sanctity about criminal or quasi criminal acts, which debar the Legislature from providing that one may be enjoined by a suit in equity from establishing a public nuisance—such as a gambling house."

On the authority of the Supreme Court in that case we hold that the fact that relator had been convicted for unlawfully selling whisky in violation of the local option law and which he was enjoined from doing, can not when arraigned before the court for contempt, successfully plead, in bar of the contempt proceedings, the fact that he had been convicted for committing that crime that he was enjoined from doing.

We therefore hold that relator is not entitled to his discharge, and he is therefore remanded to the sheriff of Johnson County.

*Relator remanded to custody.*

Davidson, Presiding Judge, dissents, and thinks applicant ought to be discharged.

ON REHEARING.

February 8, 1911.

HARPER, JUDGE.—This case is in most respects identical with the case of Ex parte Roper, the motion for rehearing in which has been this day overruled. It differs, however, from the Roper case in the fact that here the injunction ran directly against Looper in person; and again it differs from the Roper case in that the sales shown in evidence were made by Looper in person. There is a question, however, arising in this case that is not raised in the other proceedings. That question is this: It appears from the record in the case before us that Looper was fined by the court in vacation, and it is urged that this act of the court was utterly and absolutely void, and that relator is, therefore, entitled to his discharge. Such was the holding of this court in the case of Ex parte Ellis, 37 Texas Crim. Rep., 539, where Judge Henderson, speaking for the court, held in substance that an order of the district judge imposing a fine for violation of an injunction was void, and on habeas corpus he was entitled to his discharge. That this decision is manifestly incorrect and erroneous is demonstrably clear. None of the authorities cited in that case are in point except the Oregon cases. An inspection of those authorities will demonstrate that the decisions in Oregon so holding in effect were made with reference to and based on the peculiar language of the Oregon statute, which seems to deny the court the right to impose any punishment for contempt except during term time. In this State our statute provides directly to the contrary. This statute was not called to the attention of the court, and was evidently overlooked. It is as follows:

Article 3011, Revised Statutes of Texas: "Disobedience of an injunction may be punished by the court or judge, in term time or in vacation, as a contempt."

Again, this seems to be the universal rule, unless such punishment is inhibited in vacation by statute. The law is thus well stated in that invaluable work, 9 Cyclopedia of Law and Procedure, page 31: "Subject to statutory restrictions, a judge or court may punish for contempt for violation of court orders at chambers or in vacation." In support of this rule the learned author cites the following authorities: Cobb v. Black, 34 Ga., 162; State v. Archer, 48 Iowa, 310; State v. Myers, 44 Iowa, 580; State v. Loud, 24 Montana, 428, 62 Pac., 497; Nebraska Children's Home Society v. State, 57 Neb., 765, 78 N. W., 267; In re Sloan, 5 N. M., 590, 25 Pac., 930; Lathrop v. Clapp, 40 N. Y., 328; Wicker v. Dreser, 4 Abb. Pr., 93, 13 Ho. Pr., 331; Vose v. Reed, 28 Fed. Cases, 17011; 1 Woods, 647.

In view of the rule thus obtaining universally, and proceeding with reference to our statute which covers the case in express terms, and from high considerations of public policy, we think that the case of Ex parte Ellis, supra, is so manifestly erroneous, and so utterly destructive of the vast benefits of the injunction process that it ought

not to stand, and it is hereby in terms overruled.  It is a fact of which we must take judicial knowledge as members of this court and of which we are conscious that in probably half the area of Texas the District Courts convene only twice a year, and that in very many of the counties of this State they remain in session for very inconsiderable periods of time ranging from one to four or five weeks.  Injunctions as we know are sued out and should be granted only where some irreparable injury is threatened for which the parties have no adequate remedy at law.  A frequent use of injunction is to prevent waste, or as is somewhat analogous to this case, to prevent the creation of a nuisance, destruction of property, or injury to health, or both.  If the construction and rule laid down in the case of Ex parte Ellis is to be maintained, then it must result and would result that if an injunction had been obtained to prevent the construction of an open sewer in front of one's private residence, the minute court adjourned the party enjoined might by himself and his servants begin the construction of the sewer, the effect of which would be, when summer with its heat and its sun-blistering rays fell upon the foul sewage, spreading pestilence and death to the homesteader across the street, that the law would be powerless for five months in the year to afford relief.  If it were an injunction against waste, or the cutting down of ornamental trees, in a matter involving the destruction of the subject matter of litigation, one's adversary who had been enjoined might absolutely destroy it without hindrance and the arm of the law be powerless to afford any relief.  Against this doctrine we protest.  It is opposed, as we have seen, to the general rule everywhere.  It is in the face of our statute which directly gives authority to the judge in vacation to punish for such conduct, and it is directly destructive of all private rights, and would constitute such a ruinous public policy as to be destructive of civil rights and one against which reason revolts.  Of course, we are proceeding on the assumption that in the first place the injunction was properly granted; that is assumed, and must be assumed in this case.  When so granted, there should be no closed season protecting the man who would defy the just authority of the courts.

Finding no merit in the motion for rehearing, it is hereby overruled.

*Overruled.*

Davidson, Presiding Judge, dissents.