## A. L. IVEY v. STATE.

No. A-3972.    Opinion Filed Feb. 25, 1924.

(223 Pac. 401.)

(Syllabus.)

1.    **Former Jeopardy—Conviction of Maintaining Nuisance not Bar to Conviction for Violating Order of Court.** Section 7022, Comp. Stat. 1921, provides that a place where intoxicating liquor is illegally sold, and where people congregate for the purpose of buying and drinking such liquor, constitutes a public nuisance, and that such nuisance may be enjoined. This statute creates two distinct offenses. The first is a penal offense against the state, that of maintaining a nuisance; the second is a penal offense for violating some particular order of court. A conviction for one will not necessarily bar a subsequent conviction for the other.

2.    **Same—Conviction for Contempt in Violating Injunction not Bar to Conviction for Maintaining Nuisance.** A conviction for contempt for violating an order of injunction under section 7022, Comp. Stat. 1921, will not bar a subsequent conviction for keeping and maintaining a place where liquor is sold in violation of section 6999, Comp. Stat. 1921.

3.    **Intoxicating Liquors—Statutes Providing Injunction in Aid of Prohibitory Law Constitutional.** The constitutionality of statutes providing for an injunction in aid of the enforcement of the prohibitory law is upheld.

4.    **Intoxicating Liquors—Proof of Location of Liquor Nuisance.** It is not necessary to allege the exact location of a common nuisance. Ordinarily, where the exact location is alleged, it should be proved as stated, but where the place is described in two different ways and one is proved that will suffice.

5.    **New Trial—Verdict not Subject to Impeachment by Juror's Testimony.** On the broad grounds of public policy it is almost universally held that a juror after the trial cannot impeach his own verdict or the verdict of his fellow jurors by affidavit or oral testimony.

Appeal from County Court, Oklahoma County; W. R. Taylor, Judge.

A. L. Ivey was convicted of keeping a place where intoxicating liquors were sold, and he appeals.    Affirmed.

D. S. Levy, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. A. L. Ivey, plaintiff in error, here designated the defendant, was convicted in the county court of Oklahoma county of keeping a place where intoxicating liquors were sold contrary to law, and his punishment was fixed at a fine of $500 and confinement in the county jail for a period of six months.

The facts may be briefly stated thus:

In May, 1920, the county attorney of Oklahoma county filed a petition in the district court charging the defendant and others with operating and maintaining a place where liquor was sold contrary to law, and where people were permitted to congregate for the purpose of drinking, in which the state asked and was granted a temporary injunction against the defendant and others, enjoining them from permitting or conducting such nuisance, as provided by section 7022, Comp. Stat. 1921. On August 21st following, the county attorney filed an application for a citation, charging that the defendant had violated the injunction theretofore granted by permitting numerous and divers persons to congregate at this place for the purpose of drinking intoxicating liquor, and that on that day whisky, wine, and beer were bartered, sold, and given away on the premises, and asked that the defendant be adjudged guilty of contempt of court for violating the injunction. On the same day there was filed in the county court an information charging the defendant with keeping a place where intoxicating liquor was sold, by the commission of the same identical acts set forth in the citation for contempt in the district court.

In September following the defendant was tried before a jury in the district court, and found guilty of contempt for violating the orders of the court by operating a whisky joint in the place designated, in violation of the injunction order. Judgment upon the verdict fixed his punishment at a fine of $250 and imprisonment in the county jail for a period of 30 days. This case was appealed to the Criminal Court of Appeals, and the judgment therein later affirmed by this court. Ivey v. State, 21 Okla. Cr. 182, 206 Pac. 257.

In December following the case for keeping a place where intoxicating liquors were sold, in violation of the provisions of section 6999, Comp. Stat. 1921, came on to be heard in the county court, in which the defendant entered a plea in bar and of former jeopardy, on the ground that the same indentical facts on which he had been charged and found guilty in the contempt case in the district court were the identical acts constituting the offense charged in the information filed in the county court. His special plea in bar was by the court overruled. The defendant was then put on trial on his plea of not guilty, resulting in his conviction as hereinbefore stated.

The assignments of error urged by defendant may be grouped as follows:

First. That the defendant's plea in bar should have been sustained.

Second. That there was a variance between the proof and the allegations in the information describing the location of the place where the liquor was alleged to have been sold.

Third. Because the trial court refused to permit the verdict of the jury to be impeached upon an offer to show that one of the jurors had heard of extraneous facts not in

evidence which he communicated to the other jurors, and which probably induced the jury as a body to concur in the verdict rendered.

Section 7022, Comp. Stat. 1921, provides that a place where intoxicating liquors are illegally kept, and where people are in the habit of congregating for the purpose of buying and drinking intoxicating liquor, may be adjudged a public nuisance which any court of record may by order abate or enjoin, and that the owner, keeper, or manager of such place may be convicted and punished for keeping and maintaining such place. The punishment shall be imprisonment in the county jail for not less than 30 days nor more than 6 months, and a fine of not less than $50 nor more than $500. It is further provided in this section that any person violating the terms of any injunction granted in such proceeding shall be punished as for contempt, by a fine of not less than $100 nor more than $500, or by imprisonment in the county jail not less than 30 days nor more than 6 months, or by both such fine and imprisonment.

An analysis of this statute discloses that it provides for two different and distinct offenses, both of which may relate to the same facts or grow out of one and the same transaction. The first is a criminal offense against the state for maintaining a nuisance; the second is a criminal offense for violating a particular order of the court. That the two are separate and different offenses is apparent from the language of the statute and from the fact that different punishments are prescribed, and because the two are of an entirely different nature, designed to redress different infractions of law. The former is a general proceeding for an offense against the peace and dignity of the state; the latter is a proceeding to preserve the dignity of the court and to aid in the enforcement of its orders.

The distinction between the two offenses named in section 7022, supra, applies equally between the offense of violating a court order and the offense of maintaining a place where intoxicating liquors are kept for sale, defined in section 6999, Comp. Stat. 1921. These, likewise, are two separate offenses, in violation of two different laws designed to prevent or correct two different evils.

These statutes do not modify the general rule that one punished for contempt may be again punished for a violation of the general law where the facts show a violation of a different penal law, even though both offenses grow out of one and the same transaction. For instance, an attorney might be punished in contempt proceedings for a direct or an indirect assault upon opposing counsel or upon the judge, and afterwards be punished criminally for whatever degree of assault he might have committed. Jones v. Mould, 151 Iowa, 599, 132 N. W. 45; Gibson v. Hutchinson, 148 Iowa, 139, 126 N. W. 790, Ann. Cas. 1912B, 1007; 13 C. J. "Contempts; Forms, Adjudication," § 78. 6 R. C. L. 530; State v. Roby, 142 Ind. 168, 41 N. E. 145, 33 L. R. A. 213, 51 Am. St. Rep. 174; Ex parte Looper, 61 Tex. Cr. R. 129, 134 S. W. 345, Ann. Cas. 1913B, 32. The cases above cited hold to the theory that a punishment for contempt is quasi criminal; that its object and purpose is not to punish for a public offense, but to compel obedience and respect for the orders of the court. So where the statute makes the violation of a court order punishable by a fine or imprisonment it is of course criminal in its nature, but the object and purpose of this statutory punishment remains the same; that is, to compel obedience and respect for the orders of the court. Notwithstanding the fact that an act which is a violation of a court order under this or other statutes may also be a

crime under the general penal law, it is a different crime, punishable for a different purpose.

In the absence of statutes directing otherwise, an injunction is a proceeding ancillary to a civil action; but in many of the states, including our own, statutes have been enacted providing for injunctions in aid of the enforcement of the criminal law, and the constitutionality of such statutes has been upheld. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Ex parte Allison, 99 Tex. 455, 90 S. .W. 870, 2 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 653; Ex parte Looper, supra.

As long ago as 1881 the prohibitory laws of the state of Kansas, for the most part penal in their nature, provided that all places where intoxicating liquors were manufactured, sold, bartered, or given away in violation of any of the provisions of the prohibitory act should be deemed a common nuisance, and provided that the owner or keeper of such a place should upon conviction be adjudged guilty of maintaining a common nuisance, and punished by a fine and imprisonment. In the same section it was provided further that such nuisance might be enjoined by the court, and that any person violating the terms of the injunction granted in such proceedings should be punished as for contempt, by a fine and imprisonment. In the Mugler Case, supra, Mr. Justice Harlan, speaking for the United States Supreme Court, held that the state had the authority to prohibit the manufacture and sale of liquor, and had the power to declare any place kept and maintained for the illegal manufacture and sale of liquor should be deemed a common nuisance, and be abated, and at the same time to provide the punishment of the offender for maintaining the nuisance; that in addition the state had a right to lodge with the trial court the power to punish one who had vio-

lated the court's orders in the injunction proceedings. The provisions of the act are threefold: first, to punish the offender for keeping or maintaining such a place; second, to authorize a proceeding against the property itself; and, third, to punish anyone who violated or disregarded any order made in the injunction proceedings. The court held further that the proceedings, although equitable in their nature, were not inconsistent with due process of law.

This procedure by injunction, as shown by the Texas cases cited, and as provided by the Kansas statutes and our own statutes, is part and parcel of the criminal procedure devoted to the means of suppressing the illegal manufacture and sale of liquor, and the injunction remedy retains many of the characteristics of the injunction as allowed in equitable procedure at common law. That being the case, we fail to see that there is any peculiarity about the writ of injunction or any particular sanctity about criminal or quasi criminal acts which would prevent the Legislature from providing that one may be enjoined from establishing or maintaining a public nuisance, and in the same statute providing for penal punishment of one who establishes or maintains the nuisance, and providing another and different punishment for one who violates the orders of the court pending the injunction proceedings. The court so held in the Looper Case, supra. Quoting from the syllabus in that case:

"One who has been convicted of selling whisky in violation of the local option law and of an injunction restraining him from selling intoxicating liquors may not, when charged with contempt for violating the injunction, plead his conviction in bar of the contempt poceedings."

The Supreme Court of the United States, through Chief Justice Fuller, held that both houses of Congress have power to punish witnesses for contempt for refusing to give

testimony before their respective committees, and, while the witnesses are protected against criminal proceedings based on such testimony, a witness who refuses to testify may, after he has suffered punishment for contempt, also be indicted under a statute making it a misdemeanor to refuse to answer, and punishment for one cannot be pleaded in bar of conviction for the other. In re Chapman, 166 U. S. 661, 17 Sup. Ct. 677, 41 L. Ed. 1154.

We conclude, therefore, that, a punishment for a violation of an order of court being different in substance and purpose from the punishment for the offense of keeping and maintaining a nuisance, it is not, therefore, one and the same offense within the meaning of the constitutional guaranty that no person shall be twice put in jeopardy of life or liberty for the same offense, and this notwithstanding the fact that both offenses are made criminal under our statutes, and may be predicated upon the same identical facts.

The defendant next urges that there is a fatal variance between the allegations and the proof, in that the proof failed to support the allegations as to the particular description of the place maintained as a nuisance. The information described the place as a two-story building, located on the unnumbered lots in block 15, White Orchard addition to Oklahoma City, Oklahoma county and state, commonly designated and known as the Deupree Roadhouse. The proof did not show conclusively that this house was in block 15, White Orchard addition, but it did show clearly that it was the place commonly known as the Deupree Roadhouse in that vicinity. It is not necessary to allege exact location of a common nuisance. State v. Kelly, 22 N. D. 5, 132 N. W. 223, Ann. Cas. 1913E, 974; 20 R. C. L. 486. Ordinarily, where the exact location is alleged, it should be proved as

stated; but, where, as here, the place is described in two different ways, and one is proved, that will suffice under circumstances like this.

Long after the verdict and after the jury was discharged defendant offered to show in support of a motion for a new trial that one of the jurors had been told by his daughter that others had told her that young girls went to this Deupree Roadhouse, where they became intoxicated, and that this juror communicated this hearsay evidence to his fellow jurors, with the declaration that the keeper of such a place ought to be imprisoned for at least 50 years. Whether this occurred before or after submission does not appear. On the hearing of the motion for a new trial, in December following, the defendant offered to show by the oral evidence of certain jurors that juror Hicks made this statement in their presence during the trial and that the statement probably influenced the jury in arriving at the verdict. This offer was by the court refused.

On the broad grounds of public policy it is almost universally held that a juror cannot impeach his own verdict or the verdict of his fellow jurors in this manner. This question is ably discussed in Keith v. State, 7 Okla. Cr. 156, 123 Pac. 172. The holding in the Keith Case has since been followed by this court. Even if the rule were to the contrary, it would by no means follow that hearsay statements obtained through a chain of persons, each of whom obtained his information from another, would influence a jury sworn to try the case on the evidence submitted.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.