## J. HALL v. STATE.

No. A-9594.    Feb. 1, 1940.
(99 P. 2d 163.)

)

368

Page & Spencer, of Oklahoma City, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant was charged with one Roy O'Brien in the common pleas court of Oklahoma county with the offense of operating a motor vehicle upon the public highway for transporation of passengers for compensation without first having obtained from the Corporation Commission a permit; was tried, convicted and adjudged to pay a fine of $300, and has appealed to this court.

The defendant urges two grounds for reversal of this case:

(1)   Because of the insufficiency of the evidence to sustain a conviction.

(2)   Misconduct of the county attorney in the trial of said case.

Helen Pollard testified for the state that on June 30, 1938, she saw the defendant in the lobby of the Rasbach Hotel in Oklahoma City, at which time she asked the defendant if he had a car going to Tulsa; that the defendant told her he would send one to her address after her, and she paid him 50 cents for his fee at the time, and obtained a receipt therefor which was introduced in evidence. That a few minutes later a man came to her address at the Osage Hotel, and she paid him $1, and got in his car, in which there were four other passengers, and started to Tulsa; that the car was stopped at Sapulpa by the Highway Patrol, and all the occupants brought back to Oklahoma City; that Roy O'Brien, the co-defendant, was the driver of this automobile.

Cliff Goldsmith testified that he was employed by the state of Oklahoma, and had access to all the records of the Corporation Commission; that Roy O'Brien did not have a permit to carry passengers for hire over the state highways as a motor carrier, and that the defendant J. Hall did not have a permit to carry passengers for hire; that the automobile of O'Brien did not have the initials on the windshield C. C. No. which were required by the Corporation Commission. Neither the arresting officer nor any other witness was used by the state.

There was no testimony offered on behalf of the defendant.

This court in two cases, Herring v. State, 60 Okla. Cr. 449, 64 P. 2d 921, and Herring v. State, 68 Okla. Cr. 32, 95 P. 2d 128, has upheld the constitutionality of the act involved herein, and has approved the instructions in the above cases, which were tried before the same common pleas judge as tried the instant case, and which instructions are substantially the same in those two cases and in this case.

On the authority of the above cases, the contention that the evidence is insufficient to support the conviction of the defendant is without merit.

Objection has been made by the defendant to the conduct of the county attorney upon his voir dire examination of the jurors, in his opening statement to the jury, in the examination of the witnesses, and in his closing argument. In his voir dire examination of the jurors the following statements were made by the county attorney over the objections and exceptions of the defendant:

"J. Hall is this man here. * * *"

"Any of you know him? * * *"

"Now, Gentlemen, the charge is operating a travel bureau. * * *"

"Now, have any of you had occasion to ride from one city to another; or from one state to another; in any of these privately owned automobiles put out by these so-called travel bureaus, or, have any of your relatives? * * *"

"Does anybody know Jack Herring? * * *"

"Do any of you say you know the party whose name I just called, Jack Herring? * * *"

"Q. Have you had occasion to come in contact with any of these so-called travel bureaus? * * *"

"Q. Do you know anything about any of these that have been operating here in town? * * *"

In his opening statement to the jury the county attorney states as follows:

"We expect to show that this man, J. Hall, operated a place behind a desk in the lobby of the Rasbach Hotel in Oklahoma City, where he called himself a travel bureau. We will prove that he advertised in the newspapers 'transportation on a share expenses basis.' "

In his closing argument to the jury, the county attorney used the following language: "Now, here is a man that sits down here every day and violates the law."

The court permitted all of the above statements and questions to be made over the objection and exception of the defendant. At no time in the trial of this case did the county attorney ask any questions pertaining to a travel bureau, and the proof is wholly silent as to a travel bureau or as to whether defendant had committed other similar acts at about the same time as that charged here or anything concerning a man by the name of Jack Herring, or that the defendant solicited customers through advertising in the newspapers or that the defendant had an office in the Rasbach Hotel from which he operated. If the county attorney had such evidence, it was competent and should have been introduced for the jury's consideration. Surely, if such were a fact, evidence to prove the same could have been easily obtained. The county attorney must have known just what he could prove by his witnesses at the time he made his opening statement to the jury.

When the county attorney asked these questions of the jurors, and made the statements in his opening statement that he would prove the defendant conducted a travel bureau and solicited customers through advertising in the newspapers without following up his statements and making an attempt to prove the same, we hold that such conduct is improper and highly prejudicial to the defendant's rights. The statement made by the county attorney in his closing argument, that the "defendant sits down here every day and violates the law," is not supported by any evidence, and does not come within the bounds of legitimate argument. We have always condemned the practices of county attorneys in asking insinuating questions before a jury, which he does not intend to follow up. Counsel

should not go outside of the record for the purpose of exciting sympathy or arousing prejudice. Every defendant in a criminal case is entitled to fair treatment on his trial, and a prosecuting attorney should not be permitted to ask questions which he knows to be illegal for the purpose of prejudicing the defendant or to make remarks in the examination of jurors which are wholly immaterial to the cause and which cast reflections against the defendant. It is the duty of the trial court to rigidly enforce this rule. The county attorney should act impartially; he should present the state's case fairly and vigorously, but should not present before the jury any deductions not sustained by the evidence, or make side remarks that tend to prejudice the defendant.

County attorneys have to deal with all that is selfish and malicious, knavish and criminal, coarse and brutal, in human life. But the safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured, like the prowess of the savages, by the number of their victims.

We commend the county attorney for his energy in presenting the side of the prosecution in these criminal cases. The writer of this opinion was formerly a county attorney and realizes the obstacles that confront him in the trial of these cases. But in the instant case his conduct went beyond the bounds of propriety.

Upon an examination of the testimony in this case, we are satisfied that the defendant is guilty of the offense charged. There is no reason to believe that the jury could

have arrived at any other verdict, but in view of the misconduct of the county attorney in the presence of the jury, as above set forth, it may have caused the jury to inflict upon the defendant a higher penalty than they might otherwise have done.

We are not willing to reverse this case, but believe the judgment should be modified and the fine reduced from $300 to $150. This gives the defendant all that he could hope to gain by a reversal and saves the state and the defendant the cost of another trial.

It is therefore ordered that the judgment be modified, and the fine imposed upon the defendant be reduced from $300 to $150, and the judgment as modified be affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.